IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANA LYNN BOOTHBY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | )  Civil Action 19-119 |
| | ) |
| ANDREW M. SAUL, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Synopsis

Dana Lynn Boothby ("Boothby") seeks review of a decision denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Boothby alleges an onset of disability beginning on September 18, 2013. (R. 12) Following a hearing during which both Boothby and a vocational expert ("VE") appeared and testified, the ALJ denied benefits. Ultimately this appeal followed. The parties have filed Cross Motions for Summary Judgment. *See* ECF Docket Nos. 8 and 12. For the reasons set forth below. The ALJ's decision is affirmed.

### Opinion

1. Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records on which a determination of the Commissioner is

1

based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson,* 402 U.S. at 390, 91 S. Ct. 1420.

A district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.,* 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are

supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

II. The ALJ's Decision

The ALJ denied benefits at the fifth step of the analysis. More specifically, at step one, the ALJ found that Boothby has not engaged in substantial gainful activity since the alleged onset date. (R. 14) The ALJ noted that any attempts to work beyond that date were unsuccessful and did not rise to the level of substantial gainful activity. (R. 15) At step two, the ALJ concluded that Boothby suffers from the following severe impairments: cervical degenerative disc disease, multilevel cervical spinal canal stenosis and neural foraminal stenosis, myofascial pain syndrome and obesity. (R. 15-19) At step three, the ALJ determined that Boothby did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19) Between steps three and four, the ALJ decided that Boothby had the residual functional capacity ("RFC") to perform the full range of light work. (R. 20-32) At the fourth step of the analysis, the ALJ concluded that Boothby was unable to return to her past relevant work. (R. 32) Ultimately, at the fifth step of the analysis, the ALJ concluded that, considering Boothby's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that she could have performed. (R. 32-34)

III. Discussion

(1) Listing 1.04A

At the third step of the analysis, the ALJ concluded that Boothby did not meet or equal the impairments set forth in Listing 1.04. (R. 19) Boothby challenges this conclusion, insisting that her constellation of symptoms medically satisfies Listing 1.04A. She bears a heavy burden in meeting the requirements set forth in Listing 1.04A. As recognized in *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990), "[t]he Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" (citations omitted). The standard is set higher because if a claimant satisfies a listing, "he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Zebley*, 493 U.S. at 532.

Listing 1.04A provides:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)….

20 C.F.R. pt. 404, subpt. P, App. 1.

Here, the ALJ explained that, although an MRI and CT scan confirmed cervical degenerative disc disease and multilevel spinal canal with neural foraminal stenosis, there was "no evidence of nerve root compression." (R. 19) The ALJ further explained

that examinations did not demonstrate "the requisite limited range of motion in the spine or motor loss accompanied by sensory or reflex loss." (R. 19) Rather, Boothby showed normal range of motion, normal strength and motor function, and normal gait with slightly diminished sensation in the fingers and reduced grip strength on occasion. (R. 19) Substantial evidence of record supports these findings. (R. 303-04, 351, 358) Indeed, Boothby has not identified any records revealing nerve root compression. Instead, Boothby urges that the records support a finding of "neuro-anatomic distribution of pain and sensory loss." *See* ECF Docket No. 9, p. 9. Yet Boothby must demonstrate both evidence of nerve compression *and* sensory or reflex loss. Because substantial evidence of record supports the ALJ's findings that she did not satisfy *all* of the requirements of Listing 1.04A, there is no basis for remand on this issue.

(2) Residual Functional Capacity Assessment

Boothby also objects to the ALJ's finding regarding her residual functional capacity. A claimant's RFC consists of "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2010), *quoting, Burnett v. Comm'r. of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, the individual's subjective allegations, and description of his / her limitations. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The regulations provide that for claims, such as Boothby's, that were filed before March 27, 2017, a treating physician's opinion should be given "controlling weight" provided that the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence of record. *See* 20

C.F.R. §§ 404.1527(c)(2), 416.(c)(2). *See also, Fargnoli*, 247 F.3d at 43. "The ALJ may not reject a physician's findings unless she first weighs the findings against other relevant evidence and explains why certain evidence has been accepted and other evidence rejected." *Scandone v. Astrue*, Civ. No. 05-4833, 2011 WL 3652476, at * 7 (E.D. Pa. Aug. 18, 2011). Of course, "[t]he law is very clear … that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir. 2011), *quoting, Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011). Additionally, opinions proffered by state agency medical and psychological consultants merit significant consideration as well because they are considered experts in the Social Security disability programs. *Chandler*, 667 F.3d at 361, *citing*, 20 C.F.R. § 404.1527(f), 416.927(f).

As stated above, the ALJ found Boothby capable of performing the full range of light work. (R. 20-32) In so finding, the ALJ provided a detailed, 12-page discussion of the medical evidence. Most of Boothby's argument consists of a recitation of evidence which she contends supports her claim.[1] Yet this is the wrong standard. The question before me is not whether substantial evidence supports Boothby's claims. "Substantial evidence could support both Plaintiff's claims and the ALJ's findings because substantial evidence is less than a preponderance." *Hundley v. Colvin*, 2016 WL 6647913, at * 2 (W.D. Pa. Nov. 10, 2016), *citing, Jesurum v. Sec'y. of Health & Human Services*, 48 F.3d 114, 117 (3d Cir. 1995).

I find that substantial evidence supports the ALJ's RFC findings. For instance, as the ALJ represented, the MRIs and CT scans indicate that Boothby had no nerve root compression. (R. 303-04, 351, 358) Further, as the ALJ noted, Boothby attended

---

[1] Boothby makes arguments regarding the RFC throughout her brief.

6

physical therapy sessions and achieved a "normal range of motion and strength in the neck and shoulders, and reduction in hand paresthesias." (R. 22) Indeed, the therapist recommended discontinuation of formal physical therapy. (R. 22, citing Exhibit 3F/6) Additionally, Boothby routinely exhibited normal range of motion, strength, gait, and motor function during examinations with his medical care providers. (R. 22, citing Exhibit 3F/6, R. 23, citing Exhibit 6F/11-12, 15-17, R. 24, citing Exhibit 8F/59, 72-73, R. 25, citing Exhibit 6F7, R. 26, citing Exhibit 3F/2) Moreover, Boothby has received only conservative treatment and the medical providers have documented improvement in her pain complaints and headaches following the prescribed treatment. (R. 29) Further, as the ALJ discusses, Boothby's assertions regarding her disabling pain are inconsistent with her representations that she is the sole caretaker of her incapacitated daughter. (R. 30)

Boothby objects to the ALJ's discussion in three respects: the ALJ's assessment of the state agency medical consultant's conclusions; the ALJ's assessment of Dr. Mustovic's limitations; and the ALJ's citation to a progress report from Boothby's physical therapy. After careful consideration, I am not persuaded by Boothby's arguments. I turn first to Boothby's concerns over the opinion rendered by Dr. Fox, the state agency medical consultant. The ALJ accorded Dr. Fox's conclusion that Boothby could perform light duty work "great weight." (R. 30) Boothby contends Fox's report is not entitled to such weight because it "is not based on a doctor's true examination and evaluation, but on reading over other materials which have been obtained through the date of that evaluation." *See* ECF Docket No. 9, p. 12. Yet the regulations specifically recognize that opinions proffered by state agency consultants merit significant

7

consideration *because* they are considered experts in the Social Security disability programs. *Chandler*, 667 F.3d at 361, *citing*, 20 C.F.R. § 404.1527(f), 416.927(f). Consequently, Boothby's argument is not convincing.

Boothby also objects to the ALJ's citation to progress notes from Boothby's physical therapy program. Certainly, the ALJ recounted the physical therapist's notes, entered in conjunction with a session on December 22, 2014, that Boothby's "'<u>subjective complaints are worse than I would expect based upon her objective measures and very good tolerance to an extensive exercise program.</u>'" (R. 26, 338) (emphasis in original) Yet, contrary to Boothby's implications, the ALJ does not treat the physical therapist as an "acceptable medical source." *See* ECF Docket No. 9, p. 13 n. 5. Rather, the reference to the progress notes is included in the ALJ's recitation of Boothby's medical history. Consequently, I find no basis for remand in this respect.

Finally, with respect to Dr. Mustovic, the ALJ explained that he discounted her May 2014 assessment because she specifically cautioned that her opinion that Boothby required modified work duties was anticipated to last for only two months. (R. 31, 387) Further the ALJ noted that, other than limiting Boothby to four hours of work per day, Mustovic did not impose any postural or environmental limitations on her. (R. 31, 372) Mustovic also authored letters dated July 16, 2015 and August 27, 2015, in which she stated that Boothby "reports to me that she does housekeeping duties at a postal facility and does use her hands in a repetitive fashion which certainly could have been a causal factor of her bilateral carpal tunnel syndrome." (R. 385, 388) The ALJ explained that they have "minimal probative value" on Boothby's claim because they were authored in connection to a worker's compensation claim. (R. 31) Indeed, as the ALJ found, "these

8

opinions relate solely to occupational causal connection presumably rendered in support of the worker's compensation and / or Federal Retirement Disability claims." (R. 31) The ALJ's assessment of Mustovic's opinions is eminently reasonable. Consequently, I find no basis for remand.

(3) Step Five Finding

Finally, Boothby objects to the ALJ's finding at the fifth step of the analysis. The ALJ posed a hypothetical to the VE about an individual limited to sedentary work with certain further restrictions. (R. 88-89) The VE responded as follows:

> Your Honor, such a hypothetical individual would be able to perform the following occupation and titles. Your Honor, one would be security guard, DOT code 372.667-034. The DOT describes it as a light position with an SVP of 3, and that's true. There are security guard positions, though, that are sedentary. Training is also done well within 30 days, however – and the environment is controlled, however the jobs are reduced to approximately 5,000. Your Honor, that is the only job I'm comfortable identifying. Sedentary positions traditionally require up to frequent fingering and / or handling. The surveillance system monitor is a position that reportedly does not require those activities, however that position is in flux and I choose not to cite that as a viable position at this time.

(R. 89-90) Ultimately, as set forth above, the ALJ found that Boothby was capable of performing the full range of light work. Boothby contends that by failing to offer a light duty hypothetical to the VE, the ALJ deprived her counsel of the ability to question the appropriateness of light duty work and the erosion of any applicable jobs. *See* ECF Docket No. 9, p. 15.

The ALJ's conduct in questioning the VE only about sedentary jobs and then issuing a decision in which he found Boothby capable of performing the full range of light duty does cause me pause. It appears as though all parties were operating under the understanding at the hearing that the ALJ believed Boothby capable of, at most,

9

sedentary work. Certainly, the ALJ could have convened a second hearing once he formulated an RFC based upon light work. Yet I see no denial of due process. This is not an instance where the ALJ posed to the VE hypotheticals based upon a broad RFC then formulated an RFC based upon a narrower RFC. In such an instance, it would be intuitive that any jobs identified in a VE's response to a hypothetical would not necessarily encompass jobs available under a narrower RFC. But here the ALJ posed questions based upon a narrow RFC then ultimately found that the medical evidence supported a broader RFC. As set forth above, his finding in this regard is supported by substantial evidence of record.

Boothby has not identified any case law, nor did independent research reveal, suggesting that due process rights are violated in such circumstances. Indeed, Boothby's counsel "had the opportunity to fully cross-examine the VE at the administrative hearing." *Bayer v. Colvin*, 557 Fed. Appx. 280, 286 (10th Cir. 2014). As was the case in *Bayer*, here the hearing came to an end only when Boothby's counsel indicated that she was finished with her examination. (R. 93) (compare *Tanner v. Secretary of Health and Human Services*, 932 F.2d 1110 (5th Cir. 1991) (reversing and remanding where the ALJ relied upon a VE's report submitted after the close of evidence, finding that due process requires that a claimant be given the opportunity to cross-examine the VE). Further, although the hypothetical the ALJ did pose to the VE was based upon sedentary job positions, the VE identified the position of security guard which the DOT describes as a "light position." (R. 89) Admittedly, the VE reduced the number of security guard positions characterized as "sedentary" to 5,000, but Boothby does not offer any case law or other compelling argument in support of the conclusion

that the number of positions available as "light duty" is insufficient. *See* ECF Docket No. 13, p. 18, *citing*, U.S. Dep't. of Labor, Bureau of Labor Statistics, Occupational Outlook Handbook, https://www.bls.gov/ooh/protective-service/security-guards.htm, noting that there were 1,133,900 security guards available nationally in 2016). Consequently, I find no basis for remand.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANA LYNN BOOTHBY )
    Plaintiff, )
  -vs- ) Civil Action No. 19-119
                                                                                                                                               )
ANDREW M. SAUL, )
                                          )
    Defendant. )

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 12th day of February, 2020, it is hereby ORDERED that the Motion for Summary Judgment (Docket No. 12) is GRANTED and the Motion for Summary Judgment (Docket No. 8) is DENIED. It is further ORDERED that the Clerk of Courts mark this case "Closed" forthwith.

                                                          BY THE COURT:

                                                          /s/ Donetta W. Ambrose
                                                          Donetta W. Ambrose
                                                          United States Senior District Judge